UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PLAISE E. SPANGLER,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )     No. 1:23-CV-00027-JRG-SKL
                                   )
KEVIN ESCHETTE *et al.*,           )
                                   )
        Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner at the McMinn County Justice Center, has filed a pro se complaint under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will grant Plaintiff's motion to proceed *in forma pauperis* and dismiss this action as frivolous and for failure to state a claim upon which relief may be granted.

I.      **MOTION TO PROCEED *IN FORMA PAUPERIS***

A review of Plaintiff's certified inmate trust account form demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**. Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee, 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. This Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of

a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Plaintiff's Relevant Allegations

On October 17, 2020, Plaintiff and his child's mother, Megan Cherry, drove to Ten Mile, Tennessee, to pick up Defendant Jamie Eden [Doc. 2 at 6]. At the time, unbeknownst to Plaintiff, Defendant Eden was working undercover in a federal drug case known as "The Urban Cowboy" [*Id*.]. Later that evening, Eden borrowed Ms. Cherry's vehicle, and Plaintiff rode along with Eden [*Id*. at 7]. In the early morning hours of October 18, 2020, Eden left Plaintiff at a residence in Ten Mile, Tennessee, until approximately 5:00 a.m., when Eden returned [*Id*.]. Eden and Plaintiff left the residence, and later, while Eden was inside a residence or business in another town, Plaintiff realized he left his phone in Ten Mile, Tennessee [*Id*.]. Plaintiff drove the vehicle back to the Ten Mile residence where he had been dropped by Eden, and a woman ("the victim") answered the door [*Id*.].

Plaintiff located his phone and asked the victim if she had a license "and if she wanted to hang out" [*Id*.]. The victim wanted to stay at the residence until her roommates returned from Dollar General, but Plaintiff was in a rush and stated that they could stop at Dollar General so that she could speak to her roommates [*Id*.]. Plaintiff and the victim drove to Dollar General, and she went inside while Plaintiff remained in the vehicle cleaning out the floorboards [*Id*.]. While

3

cleaning the vehicle, Plaintiff found Eden's wallet, which contained Eden's credentials as a Tennessee Wildlife Officer [*Id*.].

The victim returned to the car with one of her roommates and asked Plaintiff if they could give him a ride [*Id*.]. Plaintiff agreed while advising the victim and her roommate that he "had some [] things [he] needed to check into and do" [*Id*.]. After dropping the roommate at Uncle Gus Restaurant around 10:00 a.m. on October 18, 2020, Plaintiff and the victim stopped at a Marathon Gas Station in Decatur, Tennessee [*Id*.]. Plaintiff gave the victim money to buy gas and a lottery ticket while Plaintiff remained in the vehicle [*Id*.].

While the victim was inside the gas station, she wrote a note before returning to the vehicle, pumping gas, and driving away [*Id*. at 7-8]. As the victim drove down the highway and Plaintiff scratched off his lottery ticket, they were blue lighted by a Meigs County Sheriff's patrol vehicle [*Id*.]. The victim pulled over to the side of the road [*Id*. at 8]. Plaintiff assumed the victim had been swerving or speeding and was surprised when Deputies Mowery and Ramage told the pair to step out of the vehicle immediately [*Id*.]. The deputies handcuffed Plaintiff and placed him in the back of the patrol car while the deputies and Sheriff Jackie Melton spoke with the victim [*Id*.].

Later, Sheriff Melton came to the patrol vehicle and questioned Plaintiff [*Id*.]. He also advised Plaintiff that the victim had accused Plaintiff of kidnapping, rape, and assault [*Id*. at 8-9]. Plaintiff attempted to point out that the victim had no injuries, that she had been away from the vehicle and returned on her own free will, and that her allegations did not match his previous criminal record [*Id*. at 8]. Nevertheless, Plaintiff was transported to the Meigs County Jail and placed in a holding cell [*Id*.].

While detained, Plaintiff remembered that a blue Dodge 2500 with tinted windows had pulled in front of Plaintiff and the victim "while [they] were parked right before [they] went to the Marathon Gas Station" [*Id*. at 8]. He believed the vehicle contained members of law

4

enforcement—Defendants Clay Moore, Bill Cherry, Jared Price, and Jamie Eden [*Id*.]. Plaintiff maintains that the victim claimed there were children in the truck, but Plaintiff did not think so, because no one with children in a vehicle would "sit in front of a sexual scene they pulled up on" [*Id*.].

The victim was interviewed a second time by Detective Kevin Eschette at the Meigs County Sheriff's Department, and Plaintiff was charged with aggravated kidnapping, aggravated rape, and aggravated assault on October 21, 2020 [*Id*. at 8-9]. Plaintiff was appointed counsel on October 22, 2020, in Meigs County Case No. 20-CR-302 and given a court date of November 5, 2020 [*Id*. at 9, 11]. However, Plaintiff was not "seen outside" of his cell on that date or the next three court dates [*Id*. at 11]. Plaintiff requested bail information but was informed that McMinn County placed a hold on him for a revocation warrant in McMinn County Case No. 2020-CR-1659 based off the Meigs County charges [*Id*.].

Plaintiff finally spoke with his appointed counsel on January 7, 2021 [*Id*.]. However, that attorney was allowed to withdraw, and on January 14, 2021, Plaintiff met with his newly appointed attorney, Sheridan Randolph [*Id*. at 12]. Plaintiff gave his new counsel motions and questions for the victim, Detective Eschette, and Assistant District Attorney Krista Keller [*Id*.]. Plaintiff also informed his counsel that the victim had lodged false accusations against another McMinn County man only months prior [*Id*.].

On February 18, 2021, Plaintiff's Meigs County Case No. 20-CR-302 was dismissed [*Id*. at 12-13]. Plaintiff was taken back to the Meigs County Jail because of McMinn County's hold on him [*Id*. at 13]. At around 7:00 p.m. on February 18, 2021, the State lifted that hold and Plaintiff was released [*Id*. at 13].

Plaintiff alleges that the Meigs County affidavit of complaint was drafted with two conflicting statements by the victim [*Id*. at 9]. In the first statement, the victim claimed she was

5

kidnapped from her home at sword point, forced into a vehicle where she was raped, and then made to drive to the Marathon Gas Station in Decatur, Tennessee, where she entered the store and wrote a note to the clerk for help before returning to the vehicle and driving away [*Id*.]. In the second statement, Plaintiff claims, the account differs because the victim admitted a male subject was picked up at Dollar General and given a ride after the victim was allegedly kidnapped, and she alleged she was raped only after that male had been dropped off at Uncle Gus Restaurant [*Id*. at 9-10]. Plaintiff claims that that the authorities failed their duty to further investigate "to ferret out the truth" [*Id*. at 9, 10]. Plaintiff maintains that further investigation would have led authorities to Dollar General, where camera footage would have identified the male roommate and confirmed that the victim was acting with free will [*Id*. at 10]. Instead, Plaintiff maintains, he was branded a sexual monster in the media and given ineffective counsel [*Id*. at 13]. Plaintiff also contends that his right to bail was complicated by the McMinn County hold, which was lodged only because of the Meigs County charges [*Id*. at 13].

Further, Plaintiff notes he was held over thirty days without a preliminary hearing, which turned people against him [*Id*. at 13]. This purportedly gave Defendants the opportunity to retrieve the phone Plaintiff "came across with the message of Det. Price and others" and anything Plaintiff "duplicated off it after [he] found the phone" [*Id*.]. Upon his release, Plaintiff learned he was homeless and had been robbed of everything he owned, including his reputation [*Id*. at 14-15].

Aggrieved, Plaintiff filed this action against Meigs County Detective Kevin Eschette, Meigs County Deputies Mowery and Ramage, Assistant District Attorney Krista Kelly, Tennessee Wildlife Officer Jamie Eden, Drug Task Force Transport Officer Clay Moore, Drug Task Force Agent Bill Cherry, and McMinn Sheriff's Detective Jared Price [*Id*. at 5-6]. Plaintiff asks the Court to compensate him for the allegedly false allegations, the damage done to his reputation because of the false allegations, and for everything he lost during his incarceration on the Meigs

6

County charges [*Id*. at 14]. He also asks the Court to remove Defendants' immunity and award him the cost of the filing fee [*Id*.].

    C.    **Analysis**

        1.    **Current Incarceration**

First, the Court notes that Plaintiff did not file his complaint on a § 1983 form, but it appears from his handwritten complaint that he attempted to follow the alphanumeric outline on a standard § 1983 form [*See, generally*, Doc. 2]. In a statement that seemingly relates to the portion of the standard § 1983 form asking whether Plaintiff has filed previous lawsuits dealing with the same facts, Plaintiff notes that he was reincarcerated in the McMinn County Jail on December 5, 2022, on an "F.T.A."[1] charge, even though he merely showed up late [Doc. 2 at 3, 4]. Plaintiff maintains that the officers and prosecutors are prosecuting him "for lies" to keep him from refiling his complaint [*Id*. at 3].

Given the fact that Plaintiff did not include the above-cited allegations in his portion of the complaint stating his claims, it does not appear that he intends to assert them as grounds for relief. Nonetheless, out of an abundance of caution, the Court notes that that there is nothing in these conclusory allegations linking a particular defendant to a set of facts that would raise Plaintiff's right to relief "above the speculative level," and therefore, these allegations fail to state a plausible claim for § 1983 relief. *Twombly*, 550 U.S. at 555.

        2.    **Res Judicata**

Plaintiff has filed two previous suits involving his arrest, detention, and prosecution on the October 2020 Meigs County charges at issue here, and both of those cases were dismissed for failure to state a claim upon which § 1983 relief may be granted. *See Spangler v. Barnette*, No.

---

[1] The Court presumes this is an acronym for "Failure to Appear."

1:21-cv-240 (E.D. Tenn. Jan. 3, 2022); *Spangler v. Eschette*, No. 1:22-cv-20 (E.D. Tenn. Feb. 15, 2022). Current Defendants Kevin Eschette, Mowery and Ramage[2], Krista Kelly, and Jared Price were all named as Defendants in one or both of those suits [*See* Case No. 1:21-cv-240 and Case No. 1:22-cv-20].

The doctrine of res judicata prevents "the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). It consists of two related concepts: claim preclusion and issue preclusion. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990); *Taylor v. Reynolds*, 22 F. App'x 537, 538-39 (6th Cir. 2001).

The Sixth Circuit has explained the doctrine as follows:

> Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented. Under issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation.

*Taylor*, 22 F. App'x at 538-39 (internal citation and citation omitted); *see also, e.g., Doe ex rel. Doe v. Jackson Local Schools School Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (noting that claim preclusion requires "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous

---

[2] Defendant Ramage was not identified by name in the prior actions, but rather, was identified as "Deputy Mowery['s] Partner" [*See* Doc. 1 at 4 in No. 1:21-cv-240; Doc. 1 at 5 in No. 1:22-cv-20]. It is apparent from Plaintiff's allegations, however, that Defendant Ramage was Deputy Mowery's partner.

action") (citation omitted); *Vincent v. Warren Cnty., Ky.*, 629 F. App'x 735, 740 (6th Cir. 2015) (noting that, for issue preclusion to apply, "the issue raised in the second case must have been raised, actually litigated and decided, and necessary to the court's judgment in the first case").

Plaintiff again complains in this lawsuit that he was falsely charged, imprisoned, and maliciously prosecuted on the Meigs County charges [*See, generally*, Doc. 2]. However, because this Court has already rejected those claims in prior actions, the doctrine of res judicata precludes Plaintiff from relitigating them here. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) (noting that dismissal for failure to state a claim upon which relief may be granted qualifies as a decision on the merits); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (holding party cannot relitigate essential issues that were actually adjudicated in a prior case involving a party to that case). Moreover, any additional claims or theories presented in the instant action could have been presented in the prior actions. Accordingly, Plaintiff's claims related to his Meigs County charges are barred by res judicata and will be dismissed as frivolous. *See Faber v. Carey*, No. 1:17-CV-784, 2017 WL 4784405, at *2 (W.D. Mich. Oct. 24, 2017) ("Courts have held that an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be dismissed under 28 U.S.C. § 1915(e)(2)(i) as frivolous or malicious.") (collecting cases).

### 3. New Defendants

Defendants Jamie Eden, Clay Moore, and Bill Cherry were not named in either of Plaintiff's prior suits involving the events giving rise to this lawsuit [*See* Case No. 1:21-cv-240 and Case No. 1:22-cv-20]. In the instant suit, Plaintiff asserts that these new Defendants were involved in investigating a federal drug case, and that he "believe[s]" that they watched him engage in a sexual act from a Dodge truck [Doc. 2 at 6-7, 8]. Setting aside the fact that any claims against these Defendants could have been presented in Plaintiff's prior lawsuits, and therefore, are barred,

9

*see Taylor*, 21 F. App'x at 265, the Court otherwise finds Plaintiff's allegations fail to state a claim upon which relief may be granted as to these Defendants.

To sustain a claim against Defendants, Plaintiff must adequately plead that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Plaintiff has not asserted any facts linking Defendants' alleged federal investigation with any wrongdoing of constitutional proportions, and the Court notes that Plaintiff does not allege that he was arrested in October 2020 on the basis of drug charges. As to Plaintiff's statement that he "believe[s] Clay Moore, Bill Cherry, Jared Price, and Jamie Eden was [*sic*] inside that truck" while he was presumably engaged in some form of sexual act with the victim, such an allegation fails to raise a constitutional issue, as (1) Plaintiff does not link this allegation to an infringement of a constitutional right, and (2) Plaintiff cannot sustain a § 1983 claim on a conclusory belief. *See Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (holding complaints made "on information and belief" cannot rest on conclusory allegations, but rather, "must set forth a factual basis for such belief").

Accordingly, to the extent Plaintiff's claims against Defendants Moore, Cherry, Price, and Eden are not barred, they otherwise fail to state a constitutional claim under § 1983.

### 4. Statute of Limitations

Finally, Plaintiff's complaint is time-barred by the applicable statute of limitations. Federal district courts apply the State's statute of limitations for personal injury actions in proceedings arising under 42 U.S.C. § 1983. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Tennessee, that period is one year. *See* Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168

(Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable, *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)), or when the cause of action is complete, *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule starting limitations period is "when the plaintiff has a complete and present cause of action") (citation omitted).

Plaintiff complains of actions by Defendants that began on October 18, 2020, and extended through February 18, 2021 [Doc. 2 at 13]. A claim for false arrest began to run at the time the claimant becomes detained pursuant to legal process, and since that occurred for Plaintiff in October 2020, the instant action, filed in February 2023, is untimely. *Wallace v. Kato,* 549 U.S. 384, 397 (2007) (holding false arrest claim accrues when claimant detained pursuant to legal process). Additionally, Plaintiff's imprisonment and prosecution on the challenged charges ended upon his release on February 18, 2021, and therefore, any claims of false imprisonment and/or malicious prosecution in this action are untimely. *Wallace*, 549 U.S. at 389 (holding limitation period on claim of false imprisonment "begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends"); *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."). Therefore, Plaintiff's complaint is time barred and otherwise properly dismissed as frivolous. *See Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is

obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.") (citation omitted).

Accordingly, Plaintiff's complaint will be **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Plaintiff's claims are frivolous and fail to state a claim upon which relief may be granted under §1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE